UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALEXIS MENNA,

               Petitioner,                             NOT FOR PUBLICATION
-v-                                                         MEMORANDUM & ORDER
                                                                 08-CV-2269 (CBA)
DALE ARTUS

               Respondent.
----------------------------------------------------------------x

AMON, United States District Judge:

Petitioner Alexis Menna ("Menna") filed his original petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on May 26, 2008 claiming, as his sole ground of relief, that his appellate counsel was ineffective for failing to argue that Menna's guilty plea and waiver of appeal were invalid. For the reasons that follow, Menna's petition is denied.

I. Background

On December 21, 2002, at approximately 2:30 a.m., petitioner Menna beat and stabbed Francisco Morales, causing his death. Multiple eyewitnesses, all of whom knew Menna, saw him attack Morales and identified Menna in a lineup. Menna was arrested and, after waiving his Miranda rights, informed police that he had fought with Morales but stated that he did not recall "cutting" Morales and could not remember "what happened" after the fight broke out. (Def. App. Br. at 2-3).[1] Menna was charged under Kings County Indictment Number 9064/2002 with intentional murder, depraved indifference murder, and criminal possession of a weapon. After a hearing, the trial judge denied Menna's motions to suppress his statements and the witness identifications. Id. 4.

---

[1] Citations to "Def. App. Br." refer to the "Brief for Defendant-Appellant" submitted by Menna's counsel on direct appeal to the Appellate Division.

On September 9, 2003, Menna pled guilty to intentional second-degree murder, in full satisfaction of the charges contained in the indictment. In exchange for his plea, Menna was promised a sentence of fifteen years to life imprisonment. (P. 2, 11, 13-14).[2]

At allocution, Menna admitted that, on December 21, 2002, at 2:30 a.m., he "had a fistfight" with the victim Morales during which Menna "stomped him and [] cut him". (P. 4). He stated that he had "bumped into" Morales and that "he grabbed me, started talking Spanish, put his middle finger in my face . . . [and] punched me in my eye." Id. In response to questions from the prosecutor, Menna admitted that he stabbed Morales in the face and neck, and that he continued to beat Morales on the ground, but denied cutting the letter "A" on the Morales' face. (P. 6).

During the plea hearing, the trial judge asked Menna about a prior offer to plead guilty in which Menna had stated he was intoxicated when he killed Morales and could not remember what occurred. The Court engaged in the following colloquy with Menna:

> THE COURT: Now, Mr. Menna, I've been informed that on a prior occasion there was an offer to enter a plea of guilty and at that time you said that you were intoxicated, did not remember what occurred, is that correct?
>
> MENNA: Yes.
>
> THE COURT: You remember now what occurred?
>
> MENNA: Yes.
>
> THE COURT: And you were not telling the truth when you previously said you had no recollection?
>
> MENNA: No, I was intoxicated the first time, yes.
>
> . . .
>
> THE COURT: When you said you didn't remember on the prior occasion, you were not telling the truth?

---

[2] Citations to numbers preceded by "P" refer to the pages of the plea minutes, dated September 9, 2003.

MENNA: No.

THE COURT: Meaning, no, you were not telling the truth?

MENNA: I was not telling the truth, your honor.

(P. 5).

After additional questioning, the Court accepted Menna's guilty plea. As part of the plea agreement, Menna signed a written waiver of appeal, which stated:

> I hereby waive my right to appeal. I execute this waiver after being advised by the court and my attorney of the nature of the rights I am giving up. I have been advised of my right to take an appeal (CPL § 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or argue before an appellate court on any issues relating to my conviction and sentence. I make this waiver voluntarily, knowingly and of my own free will.

(See Def. App. Br. at Attachment 1.)

The Court further questioned Menna about the waiver of his right to appeal:

THE COURT: Mr. Menna, a document has been submitted captioned Waiver of Right to Appeal. Is this your signature under the first paragraph?

MENNA: Yes, your Honor.

THE COURT: Have you discussed the contents of the document with your attorney?

MENNA: Yes, your honor.

THE COURT: You understand that someone convicted of a crime has a legal right to appeal to a higher court concerning any claimed legal error that led to the conviction, you understand that?

MENNA: Yes, your Honor.

THE COURT: He has that right unless he knowingly and voluntarily gives up that right. Was it your intention in signing this document to knowingly and voluntarily give up the right to appeal in this case?

MENNA:     Yes, your Honor.

THE COURT: Mr. Kimmel, is this your signature on the document?

KIMMEL:    Yes, your Honor.

THE COURT: You discussed the contents with your client?

KIMMEL:    Yes.

THE COURT: After that discussion, is it your professional opinion that in executing this document, defendant has knowingly and voluntarily waived the right to appeal in this case?

KIMMEL:    Yes, your honor.

THE COURT: All right, on that basis, the waiver will be accepted, made a part of the Court file, a copy to each of the parties.

(P. 7-8).

After further inquiry by the court, Menna agreed that he had adequately consulted with counsel before deciding to plead guilty, and that he was satisfied with the services of his lawyer. (P. 9). He assured the court that he wanted to plead guilty to murder in the second degree, that he understood the rights he was giving up in so doing, and that his decision to plead guilty was voluntary. (P. 9-11). Menna further assured the court that he understood the crimes with which he was charged, and the meaning of the charge of second-degree murder. (P. 10-11).

On September 19, 2003, Menna received the agreed upon sentence of fifteen years to life imprisonment. (S. 8).

Menna appealed from his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department (the "Appellate Division"). On appeal, Menna was represented by Appellate Advocates, Barry Stendig, of counsel. On December 16, 2004, Mr. Stendig informed Menna that he was unable to see any viable issues able to be raised on appeal. Accordingly, Stendig submitted an "Anders" brief to the Appellate Division, see Anders v.

California, 386 U.S. 738 (1967), asserting that Menna could not present any non-frivolous issues on appeal and requesting permission to withdraw. Mr. Stendig asserted that Menna's waiver of appeal, as well as the plea itself, appeared to have been validly entered. He noted that "[t]he terms and meaning of the waiver were explained to [Menna] on the record, and [Menna] personally acknowledged that he understood the waiver and agreed to it" and that "[a] written waiver was also signed and acknowledged in open court." (Def. App. Br. at 7). He stated that there was "nothing in the record to indicate that the waiver was not knowing, intelligent and voluntary" or any "reason to believe that the plea bargain, which included the waiver, was unfair." Id. He further observed that Menna had received the minimum sentence in a case "where he had been identified as the assailant by three eye witnesses, who knew him, and he had admitted in three statements fighting with the deceased." Id. Finally, he observed that there was "nothing in the record to indicate that the plea itself was not knowing, intelligent, and voluntary," and that the record disclosed Menna had been advised of his rights, admitted to facts sufficient to eastablish his guilt, and acknowledged the voluntariness of his plea. Id. 8.

In September 2005, Menna filed a pro se supplemental brief in which he argued that his appellate counsel was ineffective for failing to argue that Menna's guilty plea was invalid because it was not entered knowingly, intelligently and voluntarily. (Def. Supp. Br. at 7-10).[3] He further argued that his guilty plea was invalid because it raised an intoxication defense and negated the element of intent. Id. 12.

On April 4, 2006, the Appellate Division affirmed Menna's judgment of conviction and granted appellate counsel's motion to be relieved. People v. Menna, 28 A.D.3d 495, 811 N.Y.S.2d 589 (2d Dep't. 2006). The court held that Menna did not raise "any nonfrivolous

---

[3] Citations to "Def. Supp. Br." refer to the "Supplemental Brief for Defendant-Appellant" submitted to the Appellate Division on September 13, 2005.

issues in his supplemental pro se brief." Id. Menna's application to the New York Court of Appeals for leave to appeal from the Appellate Division's decision and order was denied on August 24, 2006. People v. Menna, 7 N.Y.3d 815, 822 N.Y.S.2d 490 (2006).

On October 12, 2007, Menna filed a pro se motion in the Appellate Division for a writ of error coram nobis, claiming that his appellate counsel provided ineffective assistance. The only ground asserted was that Menna's appellate counsel was constitutionally ineffective when he failed to investigate and pursue an intoxication defense. By decision and order on dated February 5, 2008, the Appellate Division denied defendant's motion for a writ of error coram nobis. People v. Menna, 48 A.D.3d 484, 849 N.Y.S.2d 792 (2d Dep't. 2008). The Appellate Division held that Menna had "failed to establish that he was denied the effective assistance of appellate counsel."

Menna applied to the New York Court of Appeals for leave to appeal from the February 5, 2008 decision and order. His application was denied on May 15, 2008. People v. Menna, 10 N.Y.3d 867, 860 N.Y.S.2d 493 (2008).

Menna now petitions this Court for a writ of habeas corpus on the sole ground that he was denied the effective assistance of appellate counsel when his lawyer claimed that there were no nonfrivolous issues to present on appeal. As set forth below, the petition is without merit.

II. Discussion

In support of his claim of ineffective assistance of appellate counsel, Menna sets forth the same three arguments from his supplemental brief to the Appellate Division. He claims that 1) facts elicited at his plea allocution gave rise to an intoxication defense and could not support a finding that Menna was guilty of intentional murder, 2) his guilty plea was invalid because it was not knowingly, intelligently and voluntarily entered, and 3) the waiver of his right to appeal was

also therefore invalid. It is undisputed that Menna fully exhausted his claim in the state courts and that the Appellate Division denied this claim on the merits.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review for a federal habeas court reviewing a merits decision of a state court. Under the statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); see also Price v. Vincent, 538 U.S. 634, 639-40 (2003).

In Strickland v. Washington, the Supreme Court established a two pronged test for ineffective assistance of counsel requiring proof of counsel's deficient performance and that the deficiency caused prejudice to the defendant. The Court stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). The Supreme Court has further observed that the right to effective assistance of counsel is a right to a meaningful adversarial proceeding, not a right to flawless representation: "The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted–even if defense counsel may have made

demonstrable errors–the kind of testing envisioned by the Sixth Amendment has occurred." United States v. Cronic, 466 U.S. 648, 656 (1984). And, in the specific context of a section 2254 petition, the Second Circuit has recognized that the demanding ineffective assistance standard is made more demanding by the deferential standard of review prescribed by the AEDPA. See Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003) (noting that "the heavy burden of showing ineffective assistance" is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the [AEDPA]").

The first prong of the Strickland test, deficient performance, requires a defendant to establish that "counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." United States v. Kurti, 427 F.3d 159, 163 (2d Cir. 2005). When making this inquiry, "the Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' that '[t]here are countless ways to provide assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a client in the same way.'" Kurti, 427 F.3d at 163 (quoting Strickland, 466 U.S. at 689) (alterations in original). With respect to the prejudice inquiry, the Strickland Court explained that it requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007).

Although the Strickland test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective assistance of appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see also Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel "need not advance every argument,

regardless of merit, urged by appellant." Evitts v. Lucey, 469 U.S. 387 (1983) (emphasis in original) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Further, reasonable professional judgments by a defendant's appellate attorney as to what constitutes the most promising issues on appeal should not be second-guessed. See Jones, 463 U.S. at 745. A claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claims, "so long as the failure to raise the . . . claim fell outside the wide range of professionally competent assistance." Mayo, 13 F.3d at 533 (quotations omitted).

In this case, it is clear that the state court did not unreasonably apply Strickland. Defendant's appellate counsel was precluded from raising any of the arguments on which Menna now relies because Menna validly waived his right to appeal his guilty plea. The appeal waiver extends to the hearing court's denial of Menna's motion to suppress physical evidence, identification testimony and statements. See People v. Kemp, 94 N.Y.2d 831, 833 (1999). The trial judge explained the terms and meaning of the waiver on the record and Menna acknowledged that he understood the waiver and agreed to it. (P. 7). Menna signed a written waiver of appeal and verbally acknowledged that it was his intention in signing the document to knowingly and voluntarily give up his right to appeal. Id.. Menna discussed the contents of the written waiver with counsel, and counsel stated that it was his professional opinion that defendant was knowingly and voluntarily waiving his right to appeal. Id. 7-8. On the basis of the record before the Court, there is no reason to believe that Menna's waiver was anything but knowing and voluntary. Pursuant to Anders v. California, 386 U.S. 738, 744 (1967), appellate counsel was permitted to request permission to withdraw when, upon conscientious examination, he determined that his client's case was wholly frivolous. He submitted an Anders brief addressing any issue in the record that might arguably support an appeal—namely, the validity of

the waiver of appeal and the underlying guilty plea—and provided a copy to Menna with instructions to file a supplemental brief should Menna intend to submit any further issues to the court. It was therefore not unreasonable for the state court to determine that counsel's performance was not ineffective.

Menna nonetheless contends that appellate counsel should have argued that his underlying guilty plea was invalid. He argues that the facts elicited at his plea allocution could not support a finding that Menna was guilty of intentional murder and that his plea was not knowingly, voluntarily and intelligently entered. These contentions are completely meritless. In support of this argument, Menna cites to the following colloquy:

> THE COURT: Now, Mr. Menna, I've been informed on a prior occasion there was an offer to enter a plea of guilty and at that time you said that you were intoxicated, did not remember what occurred, is that correct?
>
> MENNA: Yes.
>
> THE COURT: You remember now what occurred?
>
> MENNA: Yes.
>
> THE COURT: And you were not telling the truth when you previously said you had no recollection?
>
> MENNA: No, I was intoxicated the first time, yes.

(P. 5); See Def. App. Br. at 4.

Menna further cites to a colloquy with the prosecutor during which he states that he did not recall cutting the letter "A" into the victim's forehead. (P. 6). Based on these excerpts, Menna maintains that his allocution raises the possibility of an intoxication affirmative defense and precludes a finding that he possessed the necessary mental state of intent.

Menna fails to point out the following section of his allocution, however, in which he clearly admits to have lied about his inability to remember the events that occurred:

> THE COURT: When you said you didn't remember on the prior occasion, you were not telling the truth?
>
> MENNA: No.
>
> THE COURT: Meaning, no, you were not telling the truth?
>
> MENNA: I was not telling the truth, your honor.

(P. 5).

Taken in context, the record flatly contradicts Menna's self-serving claim that he testified to facts establishing an intoxication defense. The state court rightly found that appellate counsel was not ineffective for failing to raise a false claim on appeal. The transcripts of the plea and sentencing proceedings plainly establish that Menna admitted his guilt and was fully aware of the right he was giving up in exchange for the minimum allowable sentence. Nothing in the record suggests that Menna's plea was anything but knowing and voluntary, and the terms of the plea were not unfair—particularly in light of the seriousness of Menna's crime and the overwhelming evidence of his guilt. Accordingly, Menna's claims do not provide a basis for habeas relief.

III.  Conclusion

For all of the foregoing reasons, Menna's petition for a writ of habeas corpus is denied. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close this case.

Dated: Brooklyn, New York
       March 8, 2010

                                      /Signed by Judge Amon/
                                      Carol Bagley Amon
                                      United States District Judge